**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

UNITED STATES OF AMERICA          §
                                  §
*versus*                          §          CASE NO. 1:17-CR-83
                                  §
JOSEPH DAMON GORNEY               §
                                  §

### MEMORANDUM AND ORDER

Pending before the court is Defendant Joseph Damon Gorney's ("Gorney") Motion for

Sentence Reduction/Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) (#41) and

Motion for Appointment of Counsel with respect to such motion (#42).  The Government filed a

response in opposition (#46).   United States Probation and Pretrial Services ("Probation")

conducted an investigation and submitted a report.  Having considered Gorney's motion, the

Government's response, Probation's report, the record, and the applicable law, the court is of the

opinion that the motions should be denied.

I.     <u>Background</u>

On June 7, 2017, a grand jury in the Eastern District of Texas, Beaumont Division,

returned a four-count Indictment charging Gorney in Count One with Felon in Possession of a

Firearm, in violation of 18 U.S.C. § 922(g)(1); in Count Two with Possession with Intent to

Distribute a Schedule II Controlled Substance (Methamphetamine), in violation of 21 U.S.C.

§ 841(a)(1); in Count Three with Possession of a Firearm in Furtherance of a Drug Trafficking

Crime, in violation of 18 U.S.C. § 924(c); and in Count Four with Violent Felon in Possession

of Body Armor, in violation of 18 U.S.C. § 931(a)(1).  On August 16, 2017, Gorney pleaded

guilty to Counts One and Two of the Indictment pursuant to a binding plea agreement.  On January

26, 2018, the court sentenced him to 33 months' imprisonment as to each count, to be served concurrently, followed by 3 years of supervised release as to each count, to be served concurrently, pursuant to the plea agreement.  Gorney did not file an appeal or seek collateral review of his convictions.  Gorney is currently housed at Federal Correctional Institution Yazoo City Medium ("FCI Yazoo City Medium"), located in Yazoo City, Mississippi.  His projected released date is August 31, 2022.

II.     Motion for Appointment of Counsel

Gorney requests the appointment of counsel to assist him in filing a motion for sentence reduction/compassionate release under 18 U.S.C. § 3582(c)(1)(A).  There is no constitutional right to appointed counsel in post-conviction proceedings.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v. Idaho*, ___ U.S. ___, 139 S. Ct. 738, 749 (2019); *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2021) (finding that "every federal court of appeals to address the issue has agreed that there is no constitutional (or statutory) right to appointed counsel in § 3582(c) proceedings."); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1172 (2018); *In re Sepulvado*, 707 F.3d 550, 554 (5th Cir.), *cert. denied*, 571 U.S. 952 (2013).  Specifically, the Supreme Court of the United States has stated:

> Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further.  Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals.  We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, *a fortiori*, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process.

*Finley*, 481 U.S. at 555 (internal citations omitted).

The court may, however, in the interest of justice, appoint counsel to assist a defendant in the pursuit of post-conviction relief where a defendant has raised nonfrivolous claims with factually and/or legally complex issues. *See United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the discretion of the district court."); *accord United States v. Hereford*, 385 F. App'x 366, 368 (5th Cir. 2010).

> The exercise of discretion in this area is guided . . . by certain basic principles. When applying this standard and exercising its discretion in this field, the court should determine both whether the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing this claim.

*United States v. Molina-Flores*, No. 3:16-CR-130-N (19), 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018) (quoting *Jackson v. Coleman*, No. 3:11-cv-1837, 2012 WL 4504485, at *4 (M.D. Pa. Oct. 2, 2012)); *see Scoggins v. MacEachern*, No. 04-10814-PBS, 2010 WL 3169416, at *1 (D. Mass. Aug. 10, 2010) ("In order to obtain appointed counsel, 'an indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel.' The rare cases warranting appointment of counsel in the interests of justice typically involve nonfrivolous claims with factually and/or legally complex issues and a petitioner who is severely hampered in his ability to investigate the facts." (quoting *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986))).

Gorney is not entitled to the appointment of counsel to assist him with seeking a sentence reduction/compassionate release under 18 U.S.C. § 3582. *See Finley*, 481 U.S. at 555; *Whitebird*, 55 F.3d at 1010-11 (declining to recognize constitutional or statutory right to assistance of counsel

3

in bringing § 3582(c)(2) motion for sentence reduction); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings.").  Moreover, Gorney provides no basis for the court to conclude that the appointment of counsel would benefit him or the court in addressing his motion.  A motion "for compassionate release is not particularly complex factually or legally." *United States v. Drayton*, No. 10-200018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020); *see United States v. Wilfred*, No. 07-351, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020).  In any event, Gorney has failed to raise any nonfrivolous or potentially viable claims or any factually or legally complex issues that could arguably justify the appointment of post-conviction counsel.  Gorney is 42 years old and there is no indication that he is seriously ill, disabled, or otherwise a candidate for compassionate release.  Thus, the court finds that the discretionary appointment of counsel is not warranted. *See* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require").  Accordingly, Gorney's Motion for Appointment of Counsel must be rejected.

III.   Motion for Reduction in Sentence/Compassionate Release

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the

4

warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction; or

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

A.     Exhaustion of Administrative Remedies

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP).  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf.  *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).

The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse

6

[defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, Gorney maintains that on May 28, 2021, he submitted a request for compassionate release to Warden Vereen of FCI Yazoo City Medium, where he is housed, based on the alleged unlawfulness of his conviction, the court's purported lack of jurisdiction to prosecute this matter, and the substantial completion of his imposed sentence.  He further asserts that more than 30 days have lapsed since the request and the BOP has not acted on his behalf.  Probation reports, however, that the BOP has no record of Gorney's submitting a request to the warden for a reduction in sentence.  The Government agrees that Gorney presents no evidence to support his claim that he has exhausted his administrative remedies, but chooses not to dispute that claim within the meaning of 18 U.S.C. § 3582(c)(1)(A).  While Gorney arguably complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to release him from confinement under 28 U.S.C. § 3582(c)(1)(A)(i).

B.    Criteria for Release

The Fifth Circuit has held that when a defendant moves for compassionate release, he must establish three criteria.  *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).  First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii).  *Id.* at 391.  Second, the defendant

"must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]." *Id.* at 392. Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[1] *Id.*; *accord United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

Section 3582 (c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release. Rather, Congress elected to delegate its authority to the Commission. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Cooper*, 996 F.3d at 287; *Shkambi*, 993 F.3d at 392. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as extraordinary and compelling.[2] However, § 1B1.13 references only motions filed by "the Director

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational tGorneyning, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1.

of the [BOP]"—not an individual defendant.[3]  Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement set forth in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP.  *See Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Nevertheless, while recognizing that they are not binding, the court views the Commission's policy statement contained in § 1B1.13 and the commentary thereto as providing guidance regarding the types of reasons that may be deemed sufficiently "extraordinary and compelling" to warrant compassionate release.  *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).  A review of dictionary definitions also sheds light on the meaning of these terms.  The word "extraordinary" is defined as "going beyond what is usual, regular, or customary . . . exceptional to a very marked extent," whereas the word "compelling" is defined as "forceful . . . demanding attention . . . convincing."  *Extraordinary*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *Compelling*, MERRIAM-

---

[3] U.S.S.G. § 1B1.13 was last amended on November 1, 2018.  The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum.  The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines.  28 U.S.C. §§ 991(a), 994(a).  At present, the Commission has only one voting member.

WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *see United States v. Mitchell*, No. 15-20609, 2021 WL 1827202, at *2 (E.D. Mich. May 7, 2021). "Courts have interpreted 'extraordinary' in the context of compassionate release as 'beyond what is usual, customary, regular, or common,' and a 'compelling reason' as 'one so great that irreparable harm or injustice would result if the relief is not granted.'" *Mitchell*, 2021 WL 1827202, at *2 (quoting *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *5 (E.D. Mich. May 15, 2020); *United States v. Sapp*, No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020)).

In the case at bar, Gorney does not contend that his medical condition, his age, or his family circumstances constitute extraordinary and compelling reasons warranting a reduction in his sentence and his release from confinement. Instead, he asserts the following circumstances as extraordinary and compelling reasons justifying his immediate release from prison: his conviction for Felon in Possession of a Firearm under 18 U.S.C. § 922(g) was unlawful; the court was without jurisdiction to convict him of Possession with Intent to Distribute a Schedule II Controlled Substance (Methamphetamine) under 21 U.S.C. § 841(a)(1) in the absence of a valid firearms conviction; he has concentrated his efforts on self-improvement and rehabilitation while incarcerated; and the factors set forth in 18 U.S.C. § 3553(a) warrant his early release from prison.

### 1.    Conviction for Felon in Possession of a Firearm

As noted above, Gorney pleaded guilty to being a felon in possession of a firearm on August 16, 2017, and on January 26, 2018, the court sentenced him to 33 months' imprisonment for that offense pursuant to a binding plea agreement. Subsequently, on June 21, 2019, the United States Supreme Court issued its opinion in *Rehaif v. United States*. ___ U.S.___, 139 S. Ct. 2191

(2019).  The Court held that in order to convict a person for the unlawful possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2), the Government "must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm."  *Id*. at 2200.  Section 922(g)(1), the statute under which Gorney was convicted, provides that "[i]t shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year [to possess a firearm]."  Section 924(a)(2) subjects a person to criminal penalties for "knowingly" violating § 922(g).  In *Rehaif*, the Court held that "knowingly," as used in § 924(a)(2), applies to both a defendant's possession of a firearm and his relevant status under § 922(g).  *Id*. at 2196. Hence, post-*Rehaif*, to convict a person under § 922(g)(1), the Government must prove not only that he knew he possessed a firearm but also that *he knew he was a felon, i.e.*, a "person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year."  *Greer v. United States*, ___ U.S. ___, 141 S. Ct. 2090, 2095 (2021) (emphasis in original) (citing *Rehaif*, 139 S. Ct. at 2199-2000).

In the instant case, when pleading guilty, Gorney stipulated and admitted in his Factual Basis as well as confirmed in open court that "before the defendant possessed such firearm, he had been convicted in a court of a crime punishable by imprisonment for a term in excess of one year, that is, a felony offense."  Specifically, he acknowledged that had the matter proceeded to trial, the Government would have proven the following stipulated facts:

> **Joseph Damon Gorney (Gorney)**, prior to the facts giving rise to the instant offense, had been convicted of the following crime punishable by imprisonment for a term exceeding one year, namely:  Felon Evading Arrest or Detention, Case Number A110037-R, in the 128th District Court of Orange County, Texas, (on or about March 7, 2014).

The Government concedes that *Rehaif* imposes on the Government the burden of proving, or in the context of a guilty plea like this, presenting evidence to support a finding, that the defendant knew he had a prior felony conviction at the time he possessed the firearm in question.  The Government contends, however, that it arguably presented such evidence in the Factual Basis, as set forth above.

Because Gorney did not object to the lack of proof regarding this element in the trial court and he did not appeal his conviction, this matter was not raised on direct review.  If it had been raised on appeal, to obtain relief, Gorney would have had to satisfy plain error review by proving "not only that the court plainly erred, but that the error 'affected his substantial rights, *i.e.*, caused him prejudice'—typically by 'affect[ing] the outcome of the district court proceedings'—and that the error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Lavalais*, 960 F.3d 180, 184 (5th Cir. 2020) (quoting *Puckett v. United States*, 556 U.S. 129, 133 (2009)), *cert. denied*, 141 S. Ct. 2807 (2021); *accord Greer*, 141 S. Ct. at 2096-97.  In short, Gorney would have been required to show that any error under *Rehaif* actually prejudiced the outcome of the proceeding.  *Lavalais*, 960 F.3d at 184 (citing *United States v. Hicks*, 958 F.3d 399 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2810 (2021)).  As the Fifth Circuit observed in *Lavalais*:

> Demonstrating prejudice under *Rehaif* will be difficult for most convicted felons for one simple reason:  Convicted felons typically know they're convicted felons. And they know the Government would have little trouble proving that they knew. So it is hard to imagine how their conviction or guilty plea was prejudiced by any error under *Rehaif*.  As Justice Alito put it: "Juries will rarely doubt that a defendant convicted of a felony has forgotten that experience, and therefore requiring the prosecution to prove that the defendant knew that he had a prior felony conviction will do little for defendants." *Rehaif*, 139 S. Ct. at 2209 (Alito, J., dissenting).

960 F.3d at 184.  In this context, "when a defendant claims that a *Rehaif* error renders his guilty plea unknowing and involuntary, the defendant satisfies plain error review only if he shows that there is a reasonable probability that he would not have pled guilty had he known of *Rehaif*." *Hicks*, 958 F.3d at 402 (citing *United States v. Williams*, 946 F.3d 968, 972-73 (7th Cir. 2020); *United States v. Burghardt*, 939 F.3d 397, 403 (1st Cir. 2019), *cert. denied*, 140 S. Ct. 2550 (2020)).

Moreover, *Rehaif* does not announce a new rule of constitutional law, and the Supreme Court did not explicitly hold that the ruling is to be applied retroactively.  *See In re Palacios*, 931 F.3d 1314, 1315 (11th Cir. 2019).  Rather, the rule stated in *Rehaif* is a matter of statutory interpretation which merely clarifies that, in prosecuting an individual under 18 U.S.C. §§ 922(g) and 924(a), the Government must prove that the defendant knew that he violated each of the material elements of § 922(g).  *Khamisi-El v. United States*, 800 F. App'x 344, 349 (6th Cir. 2020); *Palacios*, 931 F.3d at 1315.  In fact, neither the Supreme Court nor the United States Court of Appeals for the Fifth Circuit has addressed the issue of whether *Rehaif* is retroactively applicable to cases on collateral review.  *See United States v. Milton*, No. 15-68-01, 2022 WL 453792, at *4 (W.D. La. Feb. 11, 2022); *Atkins v. U.S. Dep't of Justice*, No. 6:20-cv-00300, 2021 WL 3847827, at *1 (E.D. Tex. Aug. 27, 2021); *United States v. Hernandez*, No. 2:17-606, 2021 WL 3639670, at *2 (S.D. Tex. Aug. 17, 2021); *Davis v. Daniels*, No. 1:21-CV-20, 2021 WL 1015835, at *3 (E.D. Tex. Feb. 1, 2021), *adopted by* 2021 WL 979609 (E.D. Tex. Mar. 16, 2021).  Nonetheless, the Second, Third, Sixth, Tenth, and Eleventh Circuits Courts of Appeals, as well as numerous district courts within the Fifth Circuit and the Eastern District of Texas, have determined that *Rehaif* is not retroactively applicable to cases on collateral review.  *See United*

*States v. Scuderi*, 842 F. App'x 304, 304 (10th Cir. 2021); *Mata v. United States*, 969 F.3d 91, 92 (2d Cir. 2020); *In re Sampson*, 954 F.3d 159, 161-62 (3d Cir. 2020); *Khamisi-El*, 800 F. App'x at 349; *Palacios*, 931 F.3d at 1315; *Milton*, 2022 WL 453792, at *4; *Hernandez*, 2021 WL 3639670, at *2; *Templeton v. United States*, No. 6:19cv571, 2021 WL 1585199, at *3 (E.D. Tex. Mar. 15, 2021), *adopted by* 2021 WL 1574705 (E.D. Tex. Apr. 22, 2021); *Davis*, 2021 WL 1015835, at *3.  Hence, the holding in *Rehaif* simply has no effect on Gorney's post-conviction motion brought pursuant to 18 U.S.C. § 3582(c)(1)(A).

In any event, even if *Rehaif* were applicable, Gorney "has not argued, much less shown, that he would have gone to trial if he had been informed of the knowledge of felon status requirement."  *Hicks*, 958 F.3d at 402.  In addition, he does not demonstrate that the alleged *Rehaif* error affected his substantial rights, affected the outcome of the district court proceeding, seriously affected the fairness, integrity, or public reputation of judicial proceedings, or otherwise actually prejudiced him in any way.  *See Lavalais*, 960 F.3d at 184.  The record reflects that Gorney pleaded guilty pursuant to an extremely favorable plea agreement in which he was sentenced to concurrent 33-month terms of imprisonment for both his firearm and drug offenses despite the fact that the sentencing guidelines range was 37 to 46 months of imprisonment for each offense.  As the Government points out:

> There's another reason Gorney cannot show any prejudice from his conviction under 18 U.S.C. § 922(g).  In this case, Gorney was also sentenced to an identical 33 months' term of imprisonment for a drug trafficking offense under 21 U.S.C. § 841(a)(1).  *Rehaif* in no way impacts that statute.  The terms of imprisonment on each count in this case were ordered to run concurrently.  Even if this Court granted the relief Gorney requests, he would still be serving his sentence on the drug trafficking count.  There is no prejudice here.

Hence, contrary to his assertions, the Supreme Court's *Rehaif* decision in 2019 did not render Gorney's 2018 conviction and sentence for felon in possession of a firearm unlawful or void.  The alleged *Rehaif* error provides no reason, much less an extraordinary and compelling reason, to reduce Gorney's sentence.

### 2.    Conviction for Drug-Trafficking Offense

Gorney contends that the court was without jurisdiction to convict him of Possession with Intent to Distribute a Schedule II Controlled Substance (Methamphetamine) under 21 U.S.C. § 841(a)(1) in the absence of a valid firearms conviction.  He claims that "[w]ithout the presence of the Firearm or otherwise the firearm conviction, [18 U.S.C. § 922(g)(1)], the Government cannot establish Federal jurisdiction with respect to the narcotics charge which simply became a matter for the State of Texas to resolve."  He elaborates, "Of course, the jurisdictional, 'hook,' with respect to the firearm, is the establishment of the fact that the Firearm travelled in or otherwise affected interstate commerce."  Gorney appears to have a fundamental misunderstanding of the scope of federal jurisdiction.

Article III of the United States Constitution bestows jurisdiction in federal courts over "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority."  U.S. CONST. art. III, § 2. Furthermore, Congress has provided that "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."  18 U.S.C. § 3231; *United States v. Rojas*, 812 F.3d 382, 390 n.2 (5th Cir.) (stating that the district court had subject matter jurisdiction over a criminal case where the indictment charged the defendants with committing federal crimes (citing *United States v. Kaluza*,

780 F.3d 647, 654 (5th Cir. 2015))), *cert. denied*, 578 U.S. 1027 (2016); *United States v. Scruggs*, 714 F.3d 258, 262 (5th Cir. 2013) (indicating that "an indictment need only charge a defendant with an offense against the United States in language similar to that used by the relevant statute" to invoke subject matter jurisdiction under § 3231 (citations omitted)), *cert. denied*, 571 U.S. 889 (2013).  In criminal matters, the crime to be prosecuted must either have been created pursuant to an express or implied constitutional grant of authority or committed in an area owned by or under the exclusive control of the federal government for a federal court to have jurisdiction. Here, Gorney was charged with a drug crime in violation of the Controlled Substances Act, 21 U.S.C. §§ 801-971, which derives its jurisdiction from the Commerce Clause.  *See* U.S. CONST. art. I, § 8, cl. 3.  Article I, § 8, of the United States Constitution expressly authorizes Congress to regulate commerce among the several states.  *See id.* at art. I, § 8, cl. 3.  Courts have given a particularly liberal interpretation to Congress's commerce power, providing authority for a broad range of congressional enactments.

To be a proper subject for a commerce-based criminal statute, such as Title 21 of the United States Code, an activity must either relate to interstate transactions, have an effect on interstate commerce, or be an activity that is necessary and proper to regulate in order to effectuate the commerce power.  1 RONALD R. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONST. L.- SUBSTANCE & PROC. § 4.10(c) (May 2021 ed. 2021).  With regard to controlled substances, Congress has made the following findings and declarations:

- The illegal importation, manufacture, distribution, possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people.

- A major portion of the traffic in controlled substances flows through interstate and foreign commerce.  Incidents of the traffic which are not an integral part of the interstate or foreign flow, such as manufacture, local distribution, and possession, nonetheless have a substantial and direct effect upon interstate commerce . . . .

- Local distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances.

- Controlled substances manufactured and distributed intrastate cannot be differentiated from controlled substances manufactured and distributed interstate.  Thus, it is not feasible to distinguish, in terms of controls, between controlled substances manufactured and distributed interstate and controlled substances manufactured and distributed intrastate.

- Federal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic.

21 U.S.C. § 801(2)-(6).  The congressional intent of this chapter is clear—drug trafficking affects interstate commerce.  Indeed, the Fifth Circuit has noted that, with regard to the federal regulation of controlled substances, "there is a rational basis to conclude that federal regulation of intrastate incidents of transfer and possession is essential to effective control of the interstate incidents of such traffic." *United States v. Kirk*, 70 F.3d 791, 797 (5th Cir. 1995), *cert. denied*, 522 U.S. 808 (1997); *accord United States v. Lopez*, 2 F.3d 1342, 1367 (5th Cir. 1993), *aff'd*, 514 U.S. 549 (1995) (reaffirming that "all drug trafficking, intrastate as well as interstate, has been held properly subject to federal regulation on the basis of detailed Congressional findings that such was necessary to regulate interstate trafficking").

In this instance, the statute under which Gorney was prosecuted, 28 U.S.C. § 841, constitutes a valid exercise of Congress's commerce power.  *United States v. Lopez*, 459 F.2d 949, 950-53 (5th Cir.), *cert. denied*, 409 U.S. 878 (1972) (holding that 21 U.S.C. §§ 841 and 846

17

are constitutional); *see United States v. Palacio*, 477 F.2d 560, 560 (5th Cir. 1973) (finding 21 U.S.C. § 841 to be constitutional).  Section 841(a) provides that "[e]xcept as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."  Courts have repeatedly affirmed Congress's authority to regulate both interstate and intrastate manufacture and distribution of controlled substances pursuant to this commerce power. *See, e.g.*, *Gonzales v. Oregon*, 546 U.S. 243, 250 (2006) (discussing enactment of the Controlled Substances Act); *Gonzales v. Raich*, 545 U.S. 1, 15-22 (2005) (upholding the Controlled Substances Act as a valid exercise of Congressional power to regulate interstate commerce even with respect to purely intrastate drug-trafficking activity); *United States v. Edwards*, 98 F.3d 1364, 1369 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1170 (1997); *United States v. Kim*, 94 F.3d 1247, 1249-50 (9th Cir. 1996); *United States v. Bell*, 90 F.3d 318, 321 (8th Cir. 1996); *United States v. Lerebours*, 87 F.3d 582, 584-85 (1st Cir. 1996), *cert. denied*, 519 U.S. 1060 (1997); *United States v. Bernard*, 47 F.3d 1101, 1102 (11th Cir. 1995); *United States v. Owens*, 996 F.2d 59, 61 (5th Cir. 1993); *see also Thompson v. Holder*, 480 F. App'x 323, 325 (5th Cir.), *cert. denied*, 568 U.S. 1004 (2012) (rejecting a defendant's argument that the Controlled Substances Act did not apply to Texas).  Gorney's contention that "the Government cannot establish federal jurisdiction with respect to the narcotics charge" is foreclosed by controlling Supreme Court and Fifth Circuit authority holding that 21 U.S.C. §§ 841 and 846 are valid exercises of Congress's commerce power and that drug trafficking is properly regulated pursuant to federal law.  *See Raich*, 545 U.S. at 22; *Lopez*, 2 F.3d at 1367; *Owens*, 946 F.2d at 61; *see also United States v.*

*Britt*, 112 F. App'x 352, 356 (5th Cir. 2004), *cert. denied*, 543 U.S. 1193 (2005); *Lopez v. United States*, No. SA-17-CV-1024-XR, 2018 WL 2994648, at *6 (W.D. Tex. June 12, 2018).

As pointed out above, Congress has declared that "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. Any proceedings, to the extent they become necessary, "shall be held in [the] district and division in which [the] offense was committed." *Id*. § 3232. In this case, the Indictment clearly states that the charged violations occurred in the Eastern District of Texas. The United States District Court for the Eastern District of Texas is a district court of the United States. *See* 28 U.S.C. §§ 124, 132. The Factual Basis, signed by Gorney, refers to evidence of his drug-trafficking activity, including the recovery of approximately 27.4 grams of methamphetamine packaged for delivery from a vehicle he was driving in Beaumont, Texas, a city located in Jefferson County, which is within the Beaumont Division of the Eastern District of Texas. Consequently, Gorney's contention that this court lacked jurisdiction over the drug-trafficking crime brought pursuant to 21 U.S.C. § 841(a), as charged in the Indictment, is without merit. Hence, upon Gorney's plea of guilty, this court had jurisdiction to convict and sentence him for the commission of a violation of 21 U.S.C. § 841(a) irrespective of the status of any firearms charge also brought against him. Accordingly, Gorney's argument challenging his drug conviction is without legal basis and provides no grounds for a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).

### 3.    Rehabilitation

Gorney further states that he has concentrated his efforts since being incarcerated toward self-improvement and rehabilitation. He maintains that he was "far less mature and far less

appreciative of the values of life" at the time of his sentencing.  Gorney avers that despite the lock-down and restrictions imposed during the COVID pandemic, he has "continued to program." Gorney, however, attaches no documentation reflecting any courses he has taken or any certificates he has earned.   Nevertheless, he urges that his efforts at self-improvement establish extraordinary and compelling reasons for a reduction in his sentence.

While the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t); *see Shkambi*, 993 F.3d at 392; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."); *cf. United States v. Whitehead*, 986 F.3d 547, 551 (5th Cir. 2021) (upholding the denial of a sentence reduction from a life sentence and finding that the court may, but is not required, to consider a defendant's post-conviction rehabilitative efforts when evaluating a motion for reduction under § 404 of the First Step Act).   In fact, "[m]aking good use of one's time in prison is not uncommon, and indeed is expected."  *United States v. Blanco*, No. 16-CR-408 (CS), 2021 WL 706981, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting *United States v. Alvarez*, No. 89-CR-229, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020)).  Gorney's disciplinary record reflects, however, that he has not made good use of his time

in prison.  Instead, he has incurred disciplinary violations for possessing drugs/alcohol in August 2021, assaulting inmate Dunn in July 2020, and assaulting inmate Smith in July 2020.  Along with other penalties, he was sanctioned with the disallowance of 41 days of good conduct time for the possession offense and the disallowance of 27 days of good conduct time for each of the assaults. Thus, Gorney's efforts at self-improvement appear to have been thwarted by his own misconduct.

Hence, while Gorney has served a significant portion of his concurrent 33-month sentences, his projected release date continues to be extended due to his repeated disciplinary problems.  Moreover, although Gorney requests that he be granted sentence credit for 7 months he allegedly spent in pretrial detention, a federal district court is without authority to compute the amount of credit for time served to be accorded to a defendant.  *See United States v. Wilson*, 503 U.S. 329, 334-35 (1992); *United States v. Taylor*, 973 F.3d 414, 418 (5th Cir. 2020); *Smith v. McConnell*, 950 F.3d 285, 288 (5th Cir. 2020); *United States v. Aparicio*, 963 F.3d 470, 478 (5th Cir.), *cert. denied*, 141 S. Ct. 435 (2020); *United States v. Hankton*, 875 F.3d 786, 792 (5th Cir. 2017).  Rather, the Attorney General, acting through the BOP, is responsible for administering the sentence and determining prior-custody credit for a defendant.  *See Wilson*, 503 U.S. at 335; *Aparicio*, 963 F.3d at 476; *Smith*, 950 F.3d at 288; *United States v. Rodriguez-Falcon*, 710 F. App'x 242, 243 (5th Cir. 2018); *Hankton*, 875 F.3d at 792.  Gorney must avail himself of the administrative remedies available through the BOP for the calculation of prior custody credit before seeking relief from the court.  *See Aparicio*, 963 F.3d at 478 ("Prisoners are afforded administrative review of the computation of their credits, and may seek judicial review of these computations after exhausting their administrative remedies."); *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993) ("[G]rievances of prisoners concerning prison administration should be

presented to the [BOP] through the available administrative channels.  Only after such remedies are exhausted will the court entertain the application for relief in an appropriate case." (quoting *Lundy v. Osborn*, 555 F.2d 534, 534-35 (5th Cir. 1977))).

Thus, while Gorney may have programmed throughout the pandemic, he has not presented sufficiently extraordinary and compelling accomplishments or circumstances to merit compassionate release under the facts of this case.  *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021) (finding defendant's efforts at rehabilitation and plans to start a new life elsewhere to be commendable and recognizing the unusual burdens he faced in prison but finding those considerations not to undermine the factors that led to his original sentence—his offense, his criminal history, and the need for deterrence); *United States v. Boyd*, No. 3:17-CR-37-TAV-DCP-4, 2021 WL 5094903, at *4 (E.D. Tenn. Nov. 2, 2021) (the court, while recognizing defendant's efforts to improve himself, did not find his rehabilitation efforts to be so extraordinary as to outweigh the other sentencing factors); *United States v. Willsey*, No. 3:00-cr-00438-HZ, 2021 WL 4462889, at *2 (D. Ore. Sept. 28, 2021) (although finding defendant's steps toward rehabilitation to be laudable, the court ruled that they did not present an extraordinary circumstance that would justify compassionate release, particularly given the seriousness of his offenses of conviction); *United States v. Rounds*, No. 10-CR-239S (2), 2021 WL 4437170, at *4 (W.D.N.Y. Sept. 28, 2021) (commenting that defendant's efforts at rehabilitating himself were laudable and should be continued, but concluding that they did not alone or in combination with his other arguments constitute an extraordinary and compelling reason for compassionate release).  Similarly, the court hopes that Gorney will continue on the path to rehabilitation, but declines to exercise its discretionary authority under

§ 3582 to release him from prison based on either his rehabilitation efforts or the time he has already served in prison.  *See Lewis*, 2021 WL 4519795, at *3.

    C.    <u>Section 3553(a) Factors</u>

The court further finds that a reduction in sentence/compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020).  Gorney's offenses of conviction entail his possession of a firearm by a felon and his possession with intent to distribute methamphetamine.

Gorney's Presentence Investigation Report ("PSR"), prepared by Probation on Ocober 30, 2017, reveals that on June 3, 2016, officers with the Beaumont Police Department initiated a traffic stop on a pickup truck that was being operated by Gorney.  After activating the lights on his patrol car, an officer observed a lit object being tossed from the driver's side window of the truck.  Upon approaching Gorney in the vehicle, the officer smelled the odor of burnt marijuana being emitted from within the truck.  Gorney was asked to exit the vehicle and stand in front of the patrol car at which time he was patted down for weapons.  Upon being advised that the officer had probable cause and was going to search the truck, Gorney became visibly nervous and stated that the officer did not have his permission to search the vehicle and that he wanted his attorney

present.  Gorney was then handcuffed and placed in the backseat of the patrol car while a search of the truck ensued.

When searching the vehicle, officers noticed that the inside panel of the driver's door had been removed and the inside panel of the passenger door was extremely loose, but no contraband was located in those areas.  Under the rear bench seat of the truck, however, officers found a ballistic armored vest and a .40 caliber handgun loaded with 9 rounds of live ammunition. Officers also discovered a shoebox that contained 4 individually wrapped, clear plastic baggies that contained a crystal-like substance, which the officers believed to be methamphetamine, as well as several empty plastic bags and a small scale.  Gorney was arrested on outstanding warrants and transported to the Jefferson County Jail.  The 4 packages had a combined weight of 57.41 grams. The regional crime laboratory conducted an analysis on one of the baggies found in the truck, which was confirmed as containing methamphetamine with a net weight of 27.43 grams.  The contents of the remaining baggies were not analyzed.

As detailed in his PSR, Gorney has an extensive criminal history dating from age 18, which includes prior convictions for carrying a concealed deadly weapon, contempt of court (4), theft by deception (4), battery (2), unlawful consumption of alcohol, resisting a peace officer (2), possession of marijuana, driving with a suspended license (3), theft of property (2), possession of unlawful drug paraphernalia, evading arrest or detention (2), and displaying a fictitious license plate.  At the time of his arrest, Gorney had 8 pending charges from Kentucky, Illinois, and Texas for a variety of offenses including battery, assault, evading arrest or detention with a vehicle, unauthorized use of a motor vehicle, and displaying a fictitious license plate.  He previously failed to comply with a term of probation in Texas.  Gorney's PSR reflects that he also had 13 prior

arrests for various offenses in Illinois, Tennessee, and Texas.  Further, Gorney has a history of poly-substance abuse starting at age 14, including the use of marijuana and cocaine as well as the daily use of methamphetamine from 2015 until his arrest in 2017.  In addition, as discussed above, Gorney has been sanctioned for 3 disciplinary violations while incarcerated in which he lost good conduct time credit and other privileges.  In short, Gorney's "criminal history and conduct reflect an unabated propensity for crime." *United States v. Padilla*, No. H-14-174-1, 2021 WL 1517855, at *5 (S.D. Tex. Apr. 16, 2021).

"Compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693.  Where, as here, a prisoner has engaged in "severe" criminal conduct and has an extensive criminal history, the district court has discretion to deny compassionate release under the circumstances. *Id.* at 693-94; *accord Keys*, 846 F. App'x at 276 (rejecting Defendant's argument that the court gave too much weight to his criminal history and finding that "a mere disagreement with the court's balancing of the § 3553(a) factors . . . is not a sufficient ground for reversal").  In view of the nature and circumstances of his offenses of conviction, his extensive criminal history, his disciplinary violations while incarcerated, and his history of substance abuse, the court cannot conclude that Gorney's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole. Granting Gorney compassionate release under these circumstances would fail to provide just punishment for his offense or promote respect for the law.  *See Chambliss*, 948 F.3d at 693-94.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor

one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)).  Here, Gorney's track record is similarly a poor one.  Under these circumstances, there is no reason to believe that Gorney would not revert to his prior drug-dealing and drug-abusing behavior as well as his unlawful possession of firearms along with other criminal activities if released from prison at this time.

IV.    Conclusion

In sum, Gorney has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020); *United States v. Koons*, 455 F. Supp. 3d 285, 291-92 (W.D. La. 2020).  Gorney has not shown that he is ill, disabled, or elderly, his family is without a caregiver, his prior convictions were unlawful, his prison sentences were unwarranted, or that he has been fully rehabilitated.  In essence, Gorney has adduced no reasons, much less any extraordinary and compelling reasons, indicating that he should be released from prison at this time.

Accordingly, Gorney's Motion for Sentence Reduction/Compassionate Release (#41) and Motion for Appointment of Counsel (#42) are DENIED.

SIGNED at Beaumont, Texas, this 28th day of February, 2022.


_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE